## HALDANE et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. August 26, 1895.)

### No. 608.

1. PRACTICE ON APPEAL—ASSIGNMENT OF ERRORS.

    Alleged errors in the admission and exclusion of evidence will not be considered by the circuit court of appeals, unless the testimony alleged to have been erroneously admitted or excluded is set out substantially in the assignment of errors and the brief, as required by rules 11 and 24 of that court (11 C. C. A. cii., lxxxviii., 47 Fed. vi., xi.).

2. SAME.

    Nor will that court notice an assignment of error, based upon the refusal of an instruction to the jury, which does not set out the instruction and assign error for the refusal of the same, as required by rule 24.

3. CONTRACTS—ACCEPTANCE OF BIDS—NOTICE.

    The officers of the quartermaster's department of the United States army advertised for proposals for furnishing a quantity of hay, such pro-

posals being required by a circular issued in connection with the advertisement, to be accompanied by a guaranty that the bidder would not withdraw his proposal within 60 days, and that, if the proposal were accepted, he would enter into a contract within 10 days after the day on which he should be notified of such acceptance. *Held*, that personal notice of the acceptance of a bid was intended by the terms of such circular, and that a notice of the acceptance of a bid which was deposited in the mail a few days before the expiration of the 60 days, but did not reach the bidder until after the expiration thereof, was insufficient to render him or his guarantors liable for a failure to enter into a contract.

4. SAME—TIME.
*Held*, further, that the insertion of the clause in the circular requiring that the bids should not be withdrawn for 60 days was a determination that that period was a reasonable time for the bids to remain open, and that the government had no right to accept a bid after the expiration of 60 days.

In Error to the District Court of the United States for the District of Kansas.

This case arose out of the following circumstances: On April 30, 1890, the United States, through Major C. W. Foster, chief quartermaster for the department of Missouri, advertised for proposals to furnish hay and straw for certain military posts; among others, for Ft. Riley, Kan. The advertisement notified bidders that proposals for the delivery of 5,000,000 pounds of hay and 1,000,000 pounds of straw at Ft. Riley, Kan., would be received at the office of the chief quartermaster at St. Louis, Mo., and at the office of the post quartermaster at Ft. Riley, "until 12 o'clock noon, central standard time, May 31st, 1890, and then opened." A circular issued in connection with the advertisement contained, among other things, the following notice, addressed to bidders: "Deliveries to commence July 1, 1890, if required; be continued at such times and in such quantities as may be required; and be completed, if required, by October 15, 1890; otherwise, to be completed by June 30, 1891. * * * The proposals must be made in triplicate, * * * and will not be entertained unless accompanied by a guaranty having justification in amount of not less than 10 per centum of the total consideration of the proposal, executed strictly in accordance with instructions printed upon the back of the form, that the bidder will not withdraw his proposal within sixty days succeeding the 31st day of May, 1890, and that, if the proposal be accepted in whole or in part, he will enter into a contract and bond agreeably to the terms of his proposal within ten days after the day on which he is notified of such acceptance and award, and that, in case of his failure to enter into such contract and give bond within said time, he will pay to the United States the difference in money between the amount of his bid and the amount for which the proper officer of the United States may contract with another party to furnish said supplies. * * *" The plaintiffs in error Peter Haldane and W. D. Moore filed a proposal on May 30, 1890, to furnish and stack at Ft. Riley 5,000,000 pounds of hay, at $15\,^{49}/_{100}$ cents per hundredweight. The other plaintiffs in error, George A. Taylor and L. R. White, signed the proposal as guarantors. Other proposals to furnish hay at Ft. Riley were made by Thomas Dixon, C. J. Cook, and C. M. Dysche, respectively. All of the proposals so made were duly opened on May 31, 1890. Subsequently, on June 10, 1890, C. M. Dysche was duly notified that his bid to furnish and deliver 5,000,000 pounds of hay at Ft. Riley had been accepted, and that a contract and bond would be forwarded to him for execution as soon as possible. Dysche, it seems, on July 21, 1890, finally refused to enter into a contract with the government to furnish hay at Ft. Riley in accordance with his proposal; whereupon the chief quartermaster, as it is claimed, duly notified Peter Haldane and W. D. Moore that their proposal of May 30th to deliver 5,000,000 pounds of hay at Ft. Riley was accepted by the government. On or about July 22, 1890, the chief quartermaster also transmitted to them, by mail, a contract, to be by them executed in accordance with their proposal. The contract so tendered contained, among other things, the following clause: "Deliveries on this contract, if required, shall commence on the first day of

August, 1890; provided that the agreement is approved by the quartermaster general, U. S. army: otherwise, not until such approval is obtained." Haldane and Moore claimed that they received no notice, personal or otherwise, of the acceptance by the government of their proposal until July 31, 1890, more than 60 days subsequent to May 31, 1890, and for that reason, and other reasons as well, they declined to sign the contract or deliver the hay. For their refusal to execute said contract, and to deliver the hay according to their proposal of May 30, 1890, the United States brought an action against them in the district court of the United States for the district of Kansas, and recovered a judgment against them and their guarantors in the sum of $3,572.28. To reverse that judgment, the defendants below sued out the present writ of error.

J. R. McClure, for plaintiffs in error.

W. C. Perry, U. S. Atty., filed brief for the United States.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended in behalf of the government that the errors complained of in the brief of counsel for the plaintiffs in error, and on the oral argument of the case, have not been properly assigned in accordance with our rules; and this point is undoubtedly well taken so far as the assignments relate to the admission and exclusion of evidence. We have invariably held that we would not consider alleged errors in the admission and exclusion of evidence unless the testimony that is claimed to have been erroneously admitted or excluded is set out substantially in the assignment of errors and in the brief, as required by rules 11 and 24 of this court (11 C. C. A. cii., lxxxviii.).[1] National Bank of Commerce v. First Nat. Bank, 10 C. C. A. 87, 61 Fed. 809. There has been no attempt to comply with the provisions of these rules in the present case, and for that reason we shall not notice any of the exceptions to the admission or exclusion of evidence.

It is also manifest, we think, that the proposition most urgently argued by counsel for the plaintiffs in error—namely, that the government had no power to accept the proposal of Haldane and Moore after the acceptance of the bid of C. M. Dysche—is not so presented by this record that we can notice it, if we insist, as we are disposed to do, on a substantial observance of our rules. The proposition in question was not presented to the trial court except by an instruction, and the assignment of errors does not set out the instruction and assign error for the refusal of the same, as subdivision 2 of the second paragraph of rule 24 requires should be done when counsel intend to rely in this court upon error committed by the trial court in refusing an instruction.

Another error, which we think has been sufficiently assigned to warrant us in noticing it, consists in the action of the trial court in charging the jury, as it did in substance, that the deposit of a notice in the mail by the officers of the government on or about July 24, 1890, addressed to Haldane and Moore, notifying them that their proposal of May 30, 1890, to furnish hay at Ft. Riley, had been ac-

[1] 47 Fed. vi., xi.

cepted, was a good and sufficient notice of acceptance to bind Haldane and Moore to deliver the hay,. notwithstanding the fact that the notice did not reach them or either of them until July 31, 1890. The court declined to submit to the jury the question whether the defendants were notified in time of the acceptance of their bid, but decided as a matter of law, and so charged the jury, that the mailing of the notice of acceptance on or about July 24, 1890, addressed to the defendants at their place of residence, bound them to comply with their proposal of May 30, 1890. There was very positive and specific testimony produced before the jury that Haldane and Moore were absent from home during the latter part of July, 1890; that Haldane did not return to Junction City (where he resided, and to which place the notice of acceptance was addressed) until July 31, 1890, and that Moore did not return until some days later; that both of the defendants had been informed by the post quartermaster at Ft. Riley some time in June, after the government had formally accepted the proposal of C. M. Dysche, that there was no possibility of their obtaining the contract to furnish hay at Ft. Riley, because it had been awarded to Dysche; and that Haldane and Moore thereupon abandoned all hope of obtaining the contract and all preparations to furnish the hay, and subsequently left home, about the middle of July, Haldane going to Colorado to buy cattle, and Moore to Topeka, and subsequently to Kansas City. There was evidence that neither Haldane nor Moore had any intimation of the acceptance of their bid by the government until the morning of July 31, 1890, when Haldane returned to Junction City, and received the notice of acceptance from the mail in a letter which bore date July 24, 1890, but was probably not mailed until a day or two afterwards.

The doctrine is well established that, when a statute requires notice to be given to a person for the purpose of creating a liability, personal notice is intended, unless some other form of notice is expressly authorized by the statute. Rathbun v. Acker, 18 Barb. 393; McDermott v. Board, 25 Barb. 635, 646; Ryan v. Kelley, 9 Mo. App. 396; Corneli v. Partridge, 3 Mo. App. 575; State v. Jacobs, 2 Jones (N. C.) 52; Gorham v. Luckett, 6 B. Mon. 146, 161, 168. The same rule, we think, is applicable to notices required to be given by the terms of an express contract. If a contract requires a notice to be given for the purpose of creating a liability or imposing an obligation, personal notice should be given, unless the parties expressly stipulate that the notice shall be served in some other way, as by mailing it to a designated address. This, we think, is the correct rule, except in those cases where the party to be notified conceals himself or resorts to some trick or artifice to avoid the service of personal notice. In such cases, no doubt, reasonable efforts to serve the notice personally is all that should be required of him whose duty it is to give the notice. In the present case the circular issued by the government for the information of bidders notified them that they would be expected to enter into a contract and give a bond, within 10 days after the day on which the bidder was notified of the acceptance of his bid. No agreement having been made, and no information having been given to them that a notice deposited in

the mail would be deemed sufficient to constitute an acceptance by the government, the bidder had the right to expect personal notice, or at least to insist that, if the mail was used to convey notice, the acceptance of the proposal should not be deemed complete or effectual to bind the bidder until the agency employed to convey the notice had delivered it into the hands of the bidder. We think, therefore, that the district court erred in deciding that the deposit of the notice of acceptance in the mail some 5 or 6 days before the expiration of the 60 days during which the proposal was to remain open was a sufficient acceptance to bind the defendants. We think that the jury should have been instructed, under the circumstances heretofore detailed, that if they found that the notice of acceptance did not in fact reach Haldane and Moore, or either of them, until July 31, 1890, they were not bound to abide by and carry out their proposal.

It was suggested in the charge of the learned trial judge, but not decided, that possibly the government had the right to accept the defendants' bid even after the lapse of 60 days; that the stipulation in the circular that the bid should not be withdrawn for 60 days was not tantamount to a statement that it should not be subject to acceptance after that time. We cannot assent to that view. In the absence of the clause not to withdraw the bid for 60 days, it would only have remained open for a reasonable time. By the insertion of the clause in question, the parties to the transaction, in effect, determined how long ought to be allowed for acceptance, and, by inference at least, they agreed that more than 60 days was an unreasonable period for the proposal to remain open and unaccepted.

For the error heretofore pointed out, the judgment of the district court is reversed, and the cause is remanded for a new trial.