**MAINE PHARMACEUTICAL ASSOCI-
ATION et al.**

v.

**The BOARD OF the COMMISSIONERS OF
the PROFESSION OF PHARMACY et al.**

Supreme Judicial Court of Maine.

Sept. 6, 1968.

Sumner T. Bernstein, Portland, for plaintiff.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, August C. Flamman, Orland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

On report. The Maine Pharmaceutical Association, organized under our laws, composed of pharmacists licensed to practice in Maine, and three Maine residents who are duly licensed and practicing pharmacists within the State, seek: (1) to enjoin the Board of Commissioners of the Profession of Pharmacy and its Secretary from giving the examination required under the statute for the practice of pharmacy to one Thomas D. Smith, who has intervened as a defendant herein; and (2) to have the Resolve [1] authorizing Mr. Smith to take the examination and

1. Resolves 1967 C. 38
   "RESOLVED: That the Board of Commissioners of the Profession of Pharmacy

is authorized and directed to permit Thomas D. Smith of Ellsworth to take the examination for the practice of

any action proposed by or undertaken by the Board pursuant thereto declared to be invalid and unconstitutional.

The defendants agree that Mr. Smith does not qualify to take the examination unless the Resolve is valid and constitutional. They join in the prayers for determination of the validity and constitutionality of the Resolve and for the dismissal of the complaint.

The Board, in December 1967, voted inter alia,

"That therefore the Board will permit Thomas D. Smith to take the next regularly scheduled examination for the practice of pharmacy on June 19, 1968".

By agreement, the examination will not be given pending decision herein.

The Legislature in the plainest words sought to remove Mr. Smith from the necessary requirements for examination. The standards of education expressly established by the Legislature in § 2902 were thus intended to apply to everyone except Mr. Smith.

█ We hold the 1967 Resolve is unconstitutional on two grounds. In so doing

we recognize the full strength of the principle that every presumption is in favor of the constitutionality of acts of the Legislature. State v. Fantastic Fair and Karmil, 158 Me. 450, 466, 186 A.2d 352 (1961); First National Bank of Boston v. Maine Turnpike Authority, 153 Me. 131, 171, 136 A.2d 699 (1957).

█ If, however, the act of the Legislature falls clearly beyond the limits of constitutional authority the Court must not hesitate to declare such action void. In so doing we have no concern with the policy of the Legislature or the reasons underlying its decision. It is the Constitution, and the Constitution alone, against which we measure the action of the Legislature.

Our Constitution reads:

"The Legislature * * * with the exceptions hereinafter stated, shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this state, not repugnant to this Constitution, nor to that of the United States." Art. IV, Part Third, § 1. "The Legislature shall, from time to time provide, as far as practicable, by general laws, for all

---

pharmacy, notwithstanding any requirements necessary under the Revised Statutes, Title 32, Chapter 41."

Revised Statutes, Title 32, Chapter 41 (32 M.R.S.A. § 2801 et seq.) reads in § 2902 in part:

"Every person not already registered, entering upon the practice of pharmacy, upon the payment of a fee of $35 to the secretary of said board, except as otherwise provided, shall be examined by said commissioners and shall present to them satisfactory evidence that he had been graduated from some regularly incorporated college of pharmacy and has been employed in an apothecary store for at least one year, and is competent for the practice of pharmacy. Such employment in an apothecary store may be accumulated during the years at the college of pharmacy. The commissioners may give him a certificate of the fact and that he is authorized to engage in the business of an apothecary, and such certificate must be signed by at least

3 members of the board. No such certificate shall be issued unless the applicant is at least 21 years of age, of good moral character, a citizen of the United States and a graduate of a school of pharmacy or a department of pharmacy of a university, accredited by the American Council on Pharmaceutical Education, and shall file proof satisfactory to the board, substantiated by proper affidavits, of sufficient service and experience in a retail pharmacy under the supervision of a registered or licensed pharmacist; and shall pass an examination by said board. Service and experience in a retail pharmacy under the supervision of a licensed or registered pharmacist as required in this section shall be predominantly related to the selling of drugs, compounding physicians' prescriptions, preparing pharmaceutical preparations and keeping records and making reports required under the state and federal statutes."

matters usually appertaining to special or private legislation." Art. IV, Part Third, § 13.

The meaning of § 13 was stated by Governor Connor in his inaugural address in 1876 in language quoted and approved by the Justices in an Opinion to the House of Representatives, as follows:

"The title of 'Special and Private Laws', which includes so large a portion of the laws of former Legislatures, is an obnoxious one, conveying suggestions of privilege, favoritism, and monopoly; though happily these evils have not, in fact, stained the character of our legislation, they should not be suffered to have, even in the form of our laws, any grounds of suspicion that can be removed. Other weighty objections to special laws for private benefit are, that they are obtained at the public expense, and in their passage distract the attention of legislators from matters of public interest. The opportunity is now afforded and the duty enjoined upon you, by the amendment, to restrict the necessity for such laws to the narrowest possible limits." Opinion of the Justices, 146 Me. 316, 322, 80 A.2d 866, 868 (1951)

■■■ Obviously general legislation controlling the profession of pharmacy with the examination and licensing of pharmacists is practicable. The special legislation favoring Mr. Smith is stopped by the bar of § 13. Opinion of the Justices, 157 Me. 98, 108, 170 A.2d 657 (1961) The Resolve for this reason is unconstitutional.

■■ However, apart from § 13 the exemption of the defendant Smith violates the equal protection of the laws guaranteed by both State and Federal Constitutions. In Lewis v. Webb, 3 Me. 326 (1825) the Court held to quote the headnote, that

"The Legislature of this State have no authority by the Constitution, to pass any act or resolve granting an appeal or a new trial in any cause between private citizens, or dispensing with any general law in favor of a particular case."

Chief Justice Mellen in the opinion said in language fresh and clear after 143 years:

"All public laws, from their very nature and effects, are to be considered as rules for future cases, prescribed for the benefit and regulation of the whole community. Laws of this description are considered as the guardians of the life, safety and rights of each individual in society. In these, each man has an interest, while they remain in force, and on all occasions he may rightfully claim their protection; and all have an equal right to make this claim, and enjoy this protection; because, according to the first section in our declaration of rights, 'All men are born equally free and independent; and have certain natural, inherent, and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.' On principle then, it can never be within the bounds of legitimate legislation, to enact a special law, or pass a resolve dispensing with the general law, in a particular case, and granting a privilege and indulgence to one man, by way of exemption from the operation and effect of such general law, leaving all other persons under its operation. Such a law is neither just or reasonable in its consequences. It is our boast that we live under a government of laws and not of men. But this can hardly be deemed a blessing unless those laws have for their immoveable basis the great principle of constitutional equality. Can it be supposed for a moment, that if the legislature should pass a general law, and add a section by way of proviso, that it never should be construed to have any operation or effect upon the persons, rights or property of Archelaus Lewis or John Gordon, such a proviso would receive the sanction or even the

countenance of a court of law? And how does the supposed case differ in principle, from the present? A resolve passed after the general law, can produce only the same effect as such proviso. In fact, neither can have any legal operation."

Maine Const. Art. I, §§ 1 and 6–A, Federal Const. 14th Amendment, A. H. S. v. Mahoney, 161 Me. 391, 409, 213 A.2d 712 (1965)

The Resolve in this view violates the "great principle of Constitutional equality."

The Board is not empowered to give the requested examination to Mr. Smith. The 1967 Resolve is invalid and unconstitutional.

The entry will be:

Remanded for action consistent herewith.

DUFRESNE, J., did not sit.